CHRIS BAKER, State Bar No. 181557
cbaker@bakerlp.com
MIKE CURTIS, State Bar No. 252392
mcurtis@bakerlp.com
BAKER CURTIS & SCHWARTZ, P.C.
1 California Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 433-1064
Fax:  (415) 366-2525

DAVID CRUTCHER, State Bar No. 135407
david@crutcherlaw.com
790 Mission Avenue
San Rafael, CA  94901

Attorneys for Plaintiffs
D.L. MARKHAM, DDS, MSD, INC. 401(K) PLAN
and D.L. MARKHAM, DDS, MSD, INC., as plan administrator

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.L. MARKHAM, DDS, MSD, INC. 401(K) PLAN; 1101 Maidu Drive, Auburn, California, 95603, <br><br>D.L. MARKHAM, DDS, MSD, INC., as plan administrator; 1101 Maidu Drive, Auburn, California, 95603, on behalf of themselves and others similarly situated, <br><br>                        Plaintiffs, <br>    vs. <br><br>THE VARIABLE ANNUITY LIFE INSURANCE COMPANY (VALIC); VALIC FINANCIAL ADVISORS, INC.; VALIC RETIREMENT SERVICES COMPANY; 2929 Allen Parkway, Houston, Texas, 77019, <br>                        Defendants. | Case No. <br><br>**CLASS ACTION** <br><br>**COMPLAINT** <br><br>**(1) Knowing Participant in a Prohibited Transaction** <br>**(2) Self-Dealing Prohibited Transaction** |

BRIEF STATEMENT OF CASE

1. This is an action brought by the plan and plan administrator of an employee pension benefit plan to recover and otherwise seek redress, on a class-wide basis, for fees improperly withheld from plan assets by a life insurance company that had been retained to administer and manage those assets. Fundamentally, this class action seeks to right Defendants' wrongs of targeting and exploiting unsophisticated small employers seeking to provide benefits to their employees.

JURISDICTION AND VENUE

2. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1001, et seq., against fiduciaries of and service providers to the plans.

3. This Court has subject matter jurisdiction over this action pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. §1132(e)(1).

4. Venue with respect to this action lies in the United States District Court for the Eastern District of California, pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), because Plaintiff's Plan was and is administered in Auburn, California.

PARTIES

5. The D.L. Markham, DDS, MSD, INC. 401(k) Plan ("Plan") is an employee pension benefit plan within the meaning of Section 2(A) of ERISA, 29 U.S.C. §1001(A). D.L. Markham, DDS, MSD, INC., ("Markham") is a dental practice in the form of a California corporation located in Auburn, California, owned by David Markham, D.D.S. and Luminita Markham D.D.S., who are married to each other. The Plan and Markham are collectively referred to as "Plaintiffs." Markham is the sponsor of the Plan, and established the Plan effective January 1, 2017, to provide pension benefits to its employees. Markham is also the "administrator" of the Plan within the meaning of Section 3(16)(A) of ERISA, 29 U.S.C. §1002(16)(A), and the Plan's "named fiduciary" within the meaning of Section 402(a)(2) of ERISA, 29 U.S.C. §1102(a)(2).

6. The Variable Annuity Life Insurance Company ("VALIC") is an insurance

corporation headquartered in Houston, Texas, that specializes in, among other things, tax-qualified retirement plans. VALIC is a subsidiary of American International Group, Inc. ("AIG"). Subsidiaries of VALIC include VALIC Financial Advisors, Inc. and VALIC Retirement Services Company. Each of the three VALIC-branded entities described in this paragraph (collectively, the "Defendants") provided services to the Plan, and any reference to VALIC herein is generally a reference to one or more of those three entities.

## FACTUAL ALLEGATIONS

7. Plaintiffs hereby allege on behalf of themselves and all similarly situated plans and plan administrators:

8. Over the course of several months in early 2018, Mr. Justin Ozeroff, a VALIC sales representative, marketed the retirement plan services of VALIC to Markham. VALIC targets smaller employers/plan administrators, as shown, *inter alia,* by Markham's experiences, VALIC's reputation, and the insurance products marketed that are not competitive in the large plan market.

9. Mr. Ozeroff, and VALIC generally, was recommended to Markham as a service provider for the Plan by Ms. Ruth Jackson. Ms. Jackson, who had previously dealt with Mr. Ozeroff and VALIC while working for a prior employer, had recently been hired by Markham as the office manager. The plan was only recently established in 2017, and this was Luminita Markham's initial hire of a benefit plan service provider. Therefore, Luminita Markham placed significant reliance on Ms. Jackson's expressed favorable experience with VALIC and the representations by Mr. Ozeroff.

10. Effective May 18, 2018, Markham hired VALIC to maintain the Plan on VALIC's retirement platform by entering into an agreement with VALIC whereby VALIC would provide generally three types of services and products – pension administration, individual services, and investment products. VALIC, of course, charged fees for its services. The Annual Administrative Service Fee in these contracts was between $2,500 and $12,000. Additional services resulted in additional fees that were either charged directly to the plan administrator or to participant accounts. Markham paid fees of these types to VALIC. This

1 action concerns all fees associated with the service provider arrangement, including the
2 imposition of a cash surrender or withdrawal fee of 5% of Plan assets subject to the fee.

3     11.    The annuity contract selected by Markham for the Plan was the Portfolio
4 Director Group Fixed and Variable Deferred Annuity Contract (policy form # UITG-194) (the
5 "PD Contract"), a fully allocated group fixed and variable deferred annuity contract where
6 VALIC serves as the issuer and contract record-keeper of the assets invested under the PD
7 Contract.

8     12.    In or around January 2020, Markham determined that the investment returns
9 and quality of services provided by Markham were insufficient to justify the high fees imposed
10 by VALIC through the investment funds VALIC made available to Plan participants.
11 Markham informed VALIC that it intended to terminate the Plan's contract with VALIC and
12 select a successor Plan service provider.  After several futile discussions with VALIC
13 representatives over several months regarding the terms that VALIC would impose on the Plan
14 for leaving VALIC, Ms. Shellie Cherry, a Manager with AIG Retirement Services, emailed
15 Luminita Markham on April 30, 2020, providing information relating to the Plan's
16 deconversion from the VALIC system.  In that email, Ms. Cherry pointed out that the PD
17 Contract provided for a 5% surrender charge on transfers out of the contract on amounts
18 contributed in the previous 60 months, which would effectively cover all assets to be
19 transferred by the Plan.  Ms. Cherry also pointed out that Section 4.06 of the PD Contract
20 contained exceptions to the imposition of the surrender charge.  The only exception that is
21 referenced in Section 4.06 in the PD Contract that might apply to the Plan in the context of the
22 termination of VALIC's services states the following:

23     "The surrender charge may be waived or reduced uniformly on all
24     Participant Accounts for contracts issued under certain plans or
25     arrangements which are expected to result in administrative cost savings.
26     No reduction of waiver will be made that is unfairly discriminatory to any
27     person.  We may waive any withdrawal or surrender charge attributable to
28     Purchase Payments received during specific periods of time, and under

conditions and limitations set by Us.  Any such waiver will be made by Resolution of the Board of Directors.  Notice of the right to surrender without charge will be mailed to the Contract Owner when such waiver is declared by the Board of Directors."

13. Markham did not have actual knowledge of the surrender fee until these communications with VALIC in 2020.  Moreover, plan administrators would not have understood that VALIC applies the surrender charge to the termination of a plan's relationship with VALIC because its disclosures state only that the surrender fee provision would be imposed on participants who chose to withdraw funds from their account.

14. Markham delayed implementing its decision to terminate VALIC's services while it retained counsel.  Markham then requested a waiver of the surrender fee as it was instructed by VALIC to do, and since VALIC is expressly authorized in the PD Contract to waive the surrender fee.  On June 15, 2020, Markham engaged counsel to represent the Plan in its attempt to terminate VALIC's services without having to pay the 5% surrender fee.  Counsel sent Ms. Cherry a letter on June 23, 2020, alerting VALIC to the prohibition on penalty charges imposed by service providers under the necessary services prohibited transaction exemption set forth in ERISA Regulation §2550.408b-2(c).  Ms. Cherry indicated to Markham on June 24, 2020, via email that the matter would be reviewed by VALIC's Executive Review Committee (the "Committee").  Approximately six weeks later, on August 7, 2020, after the Committee's deliberation, Ms. Kim Gilvin, a consultant in AIG's Retirement Services division, informed Markham that the Committee had decided to impose the surrender fee upon the transfer of Plan assets.

15. On or about August 19, 2020, all Plan assets were transferred from the VALIC platform to the successor service provider's platform.  A surrender fee of $20,703 was retained by VALIC, representing approximately 4.5% of the pre-fee account balances.

16. Because VALIC was a service provider to the Plan, VALIC was a party-in-interest with respect to the Plan and similar plans.  ERISA §3(14)(B), 29 U.S.C. §1002(14)(B).  The furnishing of services to a plan by a party-in-interest constitutes a prohibited transaction,

absent an exemption. ERISA §406(a)(1)(C), 29 U.S.C. §1106(1)(C). Thus, the agreement with VALIC was a prohibited transaction unless a prohibited transaction exemption applied. No exemption applied. A contract for services is exempt from the prohibited transaction rules if the contract is for services necessary for the operation of the plan and no more than reasonable compensation is paid by the plan. ERISA §408(b)(2), 29 U.S.C. §1108(b)(2). A contract for services is not reasonable unless it permits the plan to terminate the contract without penalty on reasonably short notice. ERISA Regulation §2550.408b-2(c)(3). An early surrender fee does not reasonably compensate for loss if it provides for payment in excess of actual loss. VALIC's early surrender fee, which provides for payment in excess of any actual loss, is prohibited by ERISA.

17. VALIC knew that the PD Contract contained the surrender fee because VALIC drafted the contract that contained the fee, along with the contractual provision that reserved to itself the discretion to waive the fee based on whatever conditions and limitations VALIC itself established. VALIC also knew that imposing the surrender fee would constitute a prohibited transaction because VALIC was expressly alerted by Plan counsel that imposition of the fee was prohibited because it was an invalid termination provision and because its imposition was affirmed only after VALIC had exercised discretion conferred under the PD Contract to waive the fee. VALIC actually exercised that discretion by determining that Markham did not satisfy whatever unspecified conditions VALIC might have applied when determining whether to waive the termination fee.

**CLASS ACTION ALLEGATIONS**

18. Plaintiffs bring their causes of action on behalf of the following Class and Subclass pursuant to Federal Rule of Civil Procedure 23. Plaintiffs reserve the right to refine the definition of the proposed Class based on further investigation and discovery.

    a. The Class, is defined as "All ERISA covered plan administrators/plans that entered an agreement with VALIC in which VALIC had discretion to impose a surrender charge on outgoing transfers and which paid VALIC a fee of any kind since January 4, 2018."

    b. The Self-Dealing Subclass, is defined as: "All ERISA covered plan

administrators/plans that entered an agreement with VALIC in which VALIC imposed the surrender charge on outgoing transfers since January 4, 2018."

19. Plaintiffs' claims should be resolved on a class-wide basis, and there is a well-defined community of interest with respect to the litigation.

20. The Class and Subclass are sufficiently numerous and joinder of all putative members is impracticable.  Indeed, VALIC's Audited Statutory Financial Statements ending on December 31, 2019, show that it held $3,945,000,000 in group annuities that include a surrender charge of five percent or more.  Based on that amount there would be well over 8,000 Class Members if they are all comparably sized to the Plaintiff Plan.

21. The Class and Subclass are ascertainable.  VALIC has records showing the names of the plans and plan administrators with whom it entered into the at-issue agreements.

22. Plaintiffs' claims are typical and/or similar to the claims of the Class and Subclass they seek to represent.  Plaintiffs paid a surrender fee when the plan assets were transferred away from VALIC.  Plaintiffs also paid VALIC other fees during the time before it sought to transfer out funds. The waiver discretion reserved in the PD Contract for the surrender fee applied to the entire book of business (i.e. all Class and Subclass Members), and was exercised with respect to that book of business, which utilized this or any similar annuity contract.

23. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass.  Plaintiffs do not have interests which are adverse to the interests of absent Class or Subclass Members.

24. Class counsel is experienced, qualified and capable.  They have litigated numerous class and collective action cases and cases arising under ERISA.

25. There are common questions of law and fact.  These include:

    a. Should the fees collected by VALIC pursuant to agreements with Class Members that include surrender fees be disgorged?

    b. Is VALIC a party-in-interest with respect to the Class's plans, pursuant to ERISA §3(14)(B), 29 U.S.C. §1002(14)(B)?

  c. Does Class Members' contracting with VALIC to furnish services to their plans constitute prohibited transactions under ERISA §406(a)(1)(C), 29 U.S.C. §1106(1)(C)?

  d. Does any prohibited transaction exemption apply to VALIC's services provided pursuant to the alleged contracts?

  e. Do VALIC's services meet the necessary services exemption under ERISA Regulation §2550.408b-2(c)(3)?

  f. Does VALIC's surrender fee constitute reasonable compensation paid by the plans, per ERISA §408(b)(2), 29 U.S.C. §1108(b)(2)?

  g. Does VALIC's surrender fee constitute a penalty under ERISA Regulation §2550.408b-2(c)(3)?

  h. Did VALIC draft the contract with the Class Members that included the surrender fee?

  i. Does VALIC constitute an ERISA fiduciary to Class Members' plans because it has reserved and/or exercised discretionary authority to waive the surrender fee under the PD Contract and/or related agreements?

  j. Did VALIC know that the PD Contract contained the surrender fee?

  k. Did VALIC fail to loyally discharge its fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A), by imposing the surrender fee?

  l. Did VALIC deal with assets of the Class Members' plans in its own interest or for its own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1), by imposing the surrender fee?

  m. Does VALIC exercise discretion in determining whether to waive the surrender fee pursuant to the considerations in its agreement?

26. A class action is the superior way of resolving these claims. Class treatment will permit a large number of similarly situated persons to prosecute their claims in a single forum and without unnecessary duplication, and without fear of retaliation. Denying certification of the class would result in either (i) extraordinary cost to the court system of individualized litigation or (ii) the failure of deserving benefit plans who need their retirement savings to be made whole for

fees improperly paid to VALIC.

## COUNT I

**(Alleged by the Class against Defendants)**

**Knowing Participant in a Prohibited Transaction – ERISA §§ 406(a)(1)(C); 502(a)(3)**

27. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, Plaintiffs adopt and incorporates by reference the averments and allegations of paragraphs 1 through 26 inclusive.

28. By the conduct alleged in paragraphs 1 through 26 above, VALIC understood that it would receive additional compensation from the Plan and Class Members' plans by inserting a substantial surrender penalty in its contract documents either by discouraging Class Members' from terminating their relationships with VALIC (regardless of the merits of a termination decision by the responsible plan administrator) or by collecting a surrender fee (*i.e.,* penalty) having no relationship, express or implied, to any costs it incurred on-boarding the plan. Either way, it was guaranteed substantial income regardless of whether Markham or any other responsible fiduciary determined that VALIC deserved the business.

29. Because the Plan's contractual arrangement with VALIC contained a penalty provision, the necessary services exemption contained in ERISA Regulation §2550.408b-2(c)(3) was unavailable, and the arrangement thus constituted a prohibited transaction under ERISA §406(a)(1)(C), 29 U.S.C. §1106(a)(1)(C). Because VALIC knew, or should have known, that the penalty provision rendered the exemption unavailable, VALIC was a knowing participant in a prohibited transaction and is liable to each plan for other equitable relief specified in ERISA §502(a)(3), 29 U.S.C. §1132(a)(3). The amount of such relief requested is an amount equal to all fees paid by the Class Members' plans to VALIC (including its affiliates) in connection with the arrangement during the applicable statute of limitations. Those fees have been retained by VALIC, and should be returned to the Class Members' plans on the basis of either equitable disgorgement or an accounting.

///

///

# COUNT II

**(Alleged by the Self-Dealing Subclass against Defendants)**

**Self-Dealing Prohibited Transaction – ERISA §§ 404(a)(1)(A); 406(b); 409(a)**

30. Pursuant to the terms of the PD Contract, VALIC deliberated on whether to waive the surrender fee and thus exercised fiduciary control and authority over the disposition of Plaintiffs' assets. Pursuant to the terms of its agreement, it has the discretion to do so with all Class Members' plans. The result of VALIC's deliberation was the decision to deny a fee waiver resulting in the payment of plan assets to itself as compensation. By the conduct alleged in paragraphs 1 through 26, VALIC received compensation from the Subclass Members' plans as a result of its own fiduciary discretion, and thereby:

    a. Failed to loyally discharge its fiduciary duties, in violation of ERISA §404(a)(1)(A), 29 U.S.C. §1104(a)(1)(A);

    b. Dealt with assets of Subclass Members' plans in its own interest or for its own account, in violation of ERISA §406(b)(1), 29 U.S.C. §1106(b)(1); and

    c. Received consideration for its own interest or for its own account in violation of ERISA §406(b)(3), 29 U.S.C. §1106(b)(3).

As a result of its conduct described above, VALIC caused Subclass Members' plans to suffer losses for which it is liable, and received unjust profits which it must disgorge to each plan, pursuant to ERISA §409(a), 29 U.S.C. §1109(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court enter an Order:

1. Requiring VALIC to provide an accounting for, and to disgorge, all losses caused to Class Members' plans — including all fees retained — as a result of their knowing participation in a prohibited transaction as a nonfiduciary; and

2. Requiring VALIC to restore all losses caused to the Subclass Members' plans as a result of their self-dealing prohibited transaction as a fiduciary in imposing the surrender fee.

///

3. Awarding plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g).

4. Awarding such other appropriate equitable relief as the court sees fit.

Dated:  January 4, 2021           BAKER CURTIS & SCHWARTZ, P.C.


                                  By:    /S/ Chris Baker
                                         Chris Baker
                                         Michael Curtis

                                         David F. Crutcher
                                         Law Office of David F. Crutcher
                                         Attorneys for Plaintiffs