1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11    D.L. MARKHAM, DDS, MSD, INC.              No. 2:21-cv-00007-TLN-KJN
      401(K) PLAN; and D.L. MARKHAM,
12    DDS, MSD, INC., as plan administrator, on
      behalf of themselves and others similarly
13    situated,                                  **ORDER**

14                          Plaintiffs,

15           v.

16    THE VARIABLE ANNUITY LIFE
      INSURANCE COMPANY; VALIC
17    FINANCIAL ADVISORS, INC.; and
      VALIC RETIREMENT SERVICES
18    COMPANY,

19                          Defendants.

20

21

22           This matter is before the Court on Defendants the Variable Annuity Life Insurance

23    Company ("VALIC"), Valic Financial Advisors, Inc. ("VFA"), and Valic Retirement Services

24    Company's ("VRC") (collectively, "Defendants") Motion to Transfer Venue (ECF No. 18) and

25    Motions to Dismiss (ECF Nos. 19, 20).  Plaintiffs D.L. Markham, DDS, MSD, Inc. 401(K) Plan

26    ("the Plan") and D.L. Markham, DDS, MSD, Inc., as the Plan administrator ("Markham")

27    (collectively, "Plaintiffs") filed oppositions.  (ECF Nos. 22–24.)  Defendants submitted replies.

28    (ECF No. 26–28.)  For the reasons set forth below, the Court hereby GRANTS Defendants'

1   Motion to Change Venue (ECF No. 18) and DENIES as moot Defendants' Motions to Dismiss
2   (ECF Nos. 19, 20).

3        **I.**       **FACTUAL AND PROCEDURAL BACKGROUND**[1]

4        This action is brought by Plaintiffs, the Plan and Plan administrator of an employee
5   pension benefit plan, to recover, on a class-wide basis, fees which Defendants purportedly
6   improperly withheld from the Plan assets.  (ECF No. 1 at 2.)

7        Markham is a dental practice in Auburn, California, owned by David Markham, D.D.S.
8   and Luminita Markham, D.D.S (collectively, "the Markhams").  (*Id.*)  Markham is the sponsor of
9   the Plan and established the Plan effective January 1, 2017, to provide pension benefits to its
10  employees.  (*Id.*)  Markham is also the "administrator" of the Plan within the meaning of §
11  3(16)(A) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §
12  1002(16)(A), and the Plan's "named fiduciary" within the meaning of § 402(a)(2) of ERISA, 29
13  U.S.C. § 1102(a)(2).  (*Id.*)

14       VALIC is an insurance corporation headquartered in Houston, Texas, specializing in tax
15  qualified retirement plans.  (*Id.* at 2–3.)  VFA and VCR are subsidiaries of VALIC, and each of
16  these three Defendants provided services to the Plan.  (*Id.* at 3.)

17       Over several months in early 2018, Justin Ozeroff ("Ozeroff"), a VALIC sales
18  representative, marketed Defendants' retirement plan services to Markham.  (*Id.*)  Subsequently,
19  Markham hired Defendants in May 2018 to maintain the Plan on its retirement platform.  (*Id.*)
20  However, in or around January 2020, Markham determined the fees Defendants imposed did not
21  justify the Plan's returns.  (*Id.* at 4.)  Accordingly, Markham informed Defendants it intended to
22  terminate the Plan's contract with Defendants and select a successor service provider.  (*Id.*)
23  Following several months of discussions about the terms Defendants would impose on the Plan
24  for its exit, Markham requested a waiver of the surrender fee, as Defendants instructed.  (*Id.* at 5.)
25  After deliberating for six weeks, Defendants informed Markham they would not waive the

26

---

27  [1]    The following recitation of facts is taken, sometimes verbatim, from Plaintiffs' Complaint.
28  (ECF No. 1.)

discretionary fee.  (*Id.*)  Thus, on or about August 19, 2020, all the Plan assets were transferred from Defendants' control to the successor service provider's platform, and Defendants retained a surrender fee of $20,703, approximately 4.5% of the pre-fee account balance.  (*Id.*)

Plaintiffs filed this putative class action on January 4, 2021, alleging two causes of action against Defendants for: (1) knowingly participating in a prohibited transaction (ERISA §§ 406(a)(1)(C), 502(a)(3)); and (2) self-dealing prohibited transaction (ERISA §§ 404(a)(1)(A), 406(b), 409(a)).  (ECF No. 1 at 9–10).  On March 1, 2021, Defendants filed the instant motion to transfer venue, pursuant to U.S.C. § 1404(a) ("§ 1404"), and motions to dismiss, pursuant to Federal Rules of Civil Procedure ("Rule" or "Rules") 8 and 12(b)(6).  (ECF Nos. 18–20.) Plaintiffs submitted oppositions on April 1, 2021.  (ECF Nos. 22–24.)  Defendants replied on April 8, 2021.  (ECF Nos. 26–28.)

## II.    STANDARD OF LAW

28 U.S.C. § 1404(a), which revises and codifies the doctrine of *forum non conveniens*, permits a district court to transfer any civil action to any other district or division where it might have been brought for the convenience of parties and witnesses and in the interest of justice.  28 U.S.C. § 1404(a).[2]  The purpose of § 1404(a) "is to prevent the waste 'of time, energy[,] and money' and 'to protect litigants, witnesses[,] and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The moving party bears the burden of showing that transfer is appropriate.  *Jones v. GNC Franchising, Inc.*, 211 F. 3d 495, 499 (9th Cir. 2000).

In determining whether to transfer a case under § 1404(a), district courts employ a two-step analysis.  First, the moving party must show the transferee forum is one in which the action might have been brought.  *See Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1145 (C.D. Cal. 2009) (citing 28 U.S.C. § 1404(a)).  This includes demonstrating that subject matter jurisdiction,

---

[2]    *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981) (citing Revisor's Note, H. R. Rep. No. 308, 80th Cong., 1st Sess., A132 (1947); H. R. Rep. No. 2646, 79th Cong., 2d Sess., A127 (1946)) ("Congress enacted § 1404(a) to permit change of venue between federal courts. Although the statute was drafted in accordance with the doctrine of *forum non conveniens*, . . . it [revised the common law such that] [d]istrict courts were given more discretion to transfer under § 1404(a) than they had to dismiss on grounds of *forum non conveniens*.").

1   personal jurisdiction, and venue would have been proper if the plaintiff had filed the action in the

2   district to which transfer is sought.  *Hoffman v. Blaski,* 363 U.S. 335, 343–44 (1960).  Once the

3   party seeking transfer has made such a showing, the Court must consider a number of public and

4   private factors to determine whether, on balance, the transfer is warranted, such as: (1) plaintiff's

5   choice of forum; (2) convenience of the witnesses; (3) convenience of the parties; (4) ease of

6   access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of

7   consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court

8   congestion and time of trial in each forum.[3]  *See Barnes & Noble, Inc. v. LSI Corp.*, 823 F. Supp.

9   2d 980, 993 (N.D. Cal. 2011) (citing *Vu v. Ortho-McNeil Pharm., Inc.*, 602 F. Supp. 2d 1151,

10  1156 (N.D. Cal. 2009)); *see also Jones*, 211 F.3d at 498–99.  "No single factor is dispositive, and

11  a district court has broad discretion to adjudicate motions for transfer on a case-by-case

12  basis." *Ctr. for Biological Diversity v. Kempthorne*, No. C 08-1339 CW, 2008 WL 4543043, at

13  *2 (N.D. Cal. Oct. 10, 2008) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

14  (1988); *Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 639 (9th Cir. 1988)); *Jones*, 211 F.

15  3d at 498–99; *see also Martinez v. Knight Transp., Inc.*, No. 1:16-cv-01730-DAD-SKO,

16  2017 WL 2722015, at *2 (E.D. Cal. Jun. 23, 2017).

17  ### III.  ANALYSIS

18  Defendants request the Court transfer this action to the Southern District of Texas.  (ECF

19  No. 18 at 2.)  As a threshold question, the Court will first determine whether this matter could

20  have initially been brought in the Southern District of Texas.  The Court will then examine each

21  *Barnes & Noble* factor, as well as any other relevant factors.

---

23  [3]      Though the parties stipulate the Court should weigh the thirteen factors cited in *Morgan* to
24  decide whether to transfer the action, the Court more routinely looks to the above factors in
*Barnes & Noble*.  (ECF No. 18-2 at 10–11; ECF No. 22 at 12 (citing *Morgan v. Rohr, Inc.*, No.
25  2:19-cv-00800-TLN-KJN, 2020 WL 1451583, at *1 (E.D. Cal. Mar. 25, 2020).)  As many of the
*Morgan* factors easily fit within the *Barnes & Noble* framework and many others are redundant or
26  irrelevant, the Court will address all arguments within the *Barnes & Noble* framework.  However,
neither party discusses *Barnes & Noble* factor six, feasibility of consolidation of other claims.
27  Without any arguments and without any party pointing to another case which might be
consolidated with the instant action, the Court finds this factor irrelevant, and thus will not
28  address it.

4

A.     <u>Whether this Matter Could Have Been Brought in the Southern District of</u>

<u>Texas</u>

Defendants argue this case could have been brought in the Southern District of Texas because: (1) VALIC's headquarters are in Houston, Texas, within the Southern District of Texas; (2) Markham and VALIC consented to jurisdiction in Texas in their agreement; and (3) the conduct at issue occurred in Houston, Texas. (ECF No. 18-2 at 11.) Plaintiffs do not dispute that this action could have been brought in the Southern District of Texas. (ECF No. 22 at 12 n.4.) Absent any argument to the contrary, the Court finds this action could have been filed in the Southern District of Texas, satisfying the first prong of the transfer test.

B.     <u>Plaintiffs' Choice of Forum</u>

Defendants concede this factor weighs against transfer, however, they argue the Court should give this factor little deference, as this matter is a nationwide class action. (ECF No. 18-2 at 15.) In opposition, Plaintiffs argue this factor should receive more weight, as ERISA contains a special venue provision explicitly authorizing plaintiffs to bring actions "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." (ECF No. 22 at 14 (citing 29 U.S.C. § 1132(e)(2).)

Courts generally accord great weight to a plaintiff's choice of forum. *See Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987); *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. Of Texas*, 571 U.S. 49, 63 (2013). However, the Ninth Circuit has since tempered the deference given to a plaintiff's chosen venue, noting that "[i]f the operative facts have not occurred within the forum and the forum has no interest in the matter, [the plaintiff's] choice is entitled to only minimal consideration." *Lou*, 834 F.2d at 739.

Furthermore, when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight. *Id.* This does not mean the court accords the plaintiff's choice of forum zero deference. Rather, the weight the court accords to the plaintiff's choice of forum depends on the parties' contacts with the chosen venue. *Id.* (citing *Pac. Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968)). These contacts are evaluated by factors such as whether: (1) the plaintiff and class members reside in the district; (2) the

5

1  plaintiff's claims arise within the district; and (3) the plaintiff's claims are based on the state law

2  of the chosen district.  *See Martinez*, 2017 WL 2722015 at *4 (collecting cases).

3       Here, Defendant does not dispute that this factor weighs against transfer.  However, the

4  Court agrees it should not give this factor great deference, as Plaintiffs seek to represent a

5  nationwide class.  Indeed, the *Martinez* factors do not support greater deference.  Though

6  Plaintiffs reside in this district, it is unclear where any other class members reside, though

7  presumably class members reside throughout the country.  Second, as discussed below, though

8  Plaintiffs' injury occurred in this district by virtue of Plaintiffs residing here, the alleged wrongful

9  conduct occurred in the Southern District of Texas.  (ECF No. 22 at 16.)  Finally, Plaintiffs'

10  claims arise under a federal question, not state law.

11       Though ERISA contains an express special venue provision authorizing Plaintiffs to bring

12  actions "in the district where the plan is administered," Plaintiffs fail to explain why the other two

13  options, "where the breach took place, or where a defendant resides or may be found," which

14  favor transfer, should not be considered.[4]  *See* 29 U.S.C. § 1132(e)(2).  Further, this is not the

15  type of situation Congress intended to prevent when it enacted ERISA's venue provision.  *See*

16  *Reg'l Loc. Union Nos. 846 & 847 v. Jayco Steel Servs., Inc.*, No. 3:13-CV-02267-ST, 2015 WL

17  2123757, at *6 (D. Or. Apr. 29, 2015) (holding the defendant met its burden to overcome

18  deference to the plaintiffs' choice of forum in an ERISA action because "[u]nlike those cases[,

19  involving an accounting or qualifying of the unfunded obligations], the primary issue here is not

20  the ministerial accounting or computational issues of any delinquency, but whether plaintiffs can

21  ──────────

22  [4]       The Court notes Defendants further contend this Court may not have jurisdiction over
   non-resident class members' claims, based on the Supreme Court's holding in *Bristol-Myers*.

23  (ECF No. 18-2 at 16–18 (citing *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 137 S.
   Ct. 1773, 1781 (2017).)  In opposition, Plaintiffs argue *Bristol-Myers* does not apply to ERISA

24  actions.  (ECF No. 22 at 25–26.)  In reply, Defendants point out the special venue provision in
   ERISA, upon which Plaintiffs rely, allows a plaintiff to bring an action "in the district where the

25  plan is administered," which could be different for each class member in this matter, creating a
   jurisdictional issue.  (ECF No. 26 at 9.)  To avoid such an issue, Defendants argue the Southern

26  District of Texas has jurisdiction over the matter because it is "where the breach took place, or
   where a defendant resides or may be found."  (*Id.* (citing 29 U.S.C. § 1132(e)(2).)  While the

27  Court need not decide whether it can exercise jurisdiction over non-resident class members at this
   stage, as the class has not yet been certified, the Court agrees that should a jurisdictional issue

28  arise, this would weigh in favor of transfer.

6

1    make any claim against [the defendant] based on the [agreement] and its incorporation of the

2    Trust Funds.  That issue is rooted in events that took place in Texas and involves several

3    questions of fact that will require witness testimony, in addition to production of documents.");

4    *see also Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heat & Air Cond., Inc.*, 702 F.

5    Supp. 1253, 1256 (E.D. Va. 1988) (noting ERISA's venue provision was explicitly intended to

6    "remove jurisdictional and procedural obstacles which in the past appear to have hampered

7    effective enforcement of fiduciary responsibilities under state law for recovery of benefits due to

8    participants") (citing H.R. Rep. No. 93–533 at 17 (1973), *reprinted in* 1974 U.S.C.C.A.N. 4639,

9    4655)).  Importantly, Plaintiffs are not the Plan participants nor beneficiaries.  *See Bd. of Trs.,*

10   *Sheet Metal Workers Nat'l Fund*, 702 F. Supp. at 1256 ("The enforcement provisions have been

11   designed specifically to provide both the Secretary and participants and beneficiaries with broad

12   remedies for redressing or preventing violations of the Act.").

13          Therefore, the Court finds this factor weighs slightly against transfer, but is given little

14   deference.

15                    C.    Convenience of the Witnesses

16          In support of their motion to transfer venue, Defendants argue "[v]irtually all relevant

17   witnesses are located in Texas."  (ECF No. 18-2 at 13.)  Defendants contend many of the

18   witnesses will be VALIC employees in the Southern District of Texas and identify two third-

19   party witnesses in Texas who will be outside the subpoena power of California courts.  (*Id.* at 13–

20   14.)  In opposition, Plaintiffs argue Defendants ignore the presence of key witnesses residing in

21   California and similarly identify a third-party witness who would be outside the subpoena power

22   of the Southern District of Texas.  (ECF No. 22 at 17–19.)  In reply, Defendants contend, based

23   on Plaintiffs' Complaint, the witnesses who stand to have the most relevant information are based

24   in Texas.  (ECF No. 26 at 4.)

25          The convenience of witnesses is often the most important factor in determining whether a

26   transfer under § 1404 is appropriate.  *See, e.g.*, *Denver & Rio Grande W. R.R. Co. v. Brotherhood*

27   *of R.R. Trainmen*, 387 U.S. 556, 560 (1967) ("venue is primarily a matter of convenience of

28   litigants and witnesses"); *A.J. Industries v. U.S. D. for C.D. of Cal.*, 503 F.2d 384, 386–87 (9th

                                               7

Cir. 1974) (discussing the importance and history of the convenience of witnesses in evaluating a § 1404 transfer); *Decter v. MOG Sales, LLC*, No. 2:06-cv-1738 MCE GGH, 2006 WL 3703368, at *2 (E.D. Cal. Dec. 14, 2006) ("The convenience of the witnesses is said to be the most important factor in considering a transfer motion.") (citing *Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 89 F.R.D. 497, 501 (C.D. Cal. 1981)); *Applied Elastomerics, Inc. v. Z–Man Fishing Products, Inc.*, No. C 06–2469 CW, 2006 WL 2868971, at *4 (N.D. Cal. Oct. 6, 2006) (same).  When transferring a case, it must be to a *more* convenient venue, not simply an equally convenient venue.  *See* 28 U.S.C. § 1404(a).  The purpose of § 1404(a) is to prevent the waste of time, energy, and money to witnesses.  *Van Dusen*, 376 U.S. at 616, 629.  The most convenient forum is frequently the place where the cause of action arose.  *Id.* at 628.

Here, Defendants cite to a declaration provided by Eric Levy, the Executive Vice President for VALIC, who resides in Houston, Texas ("Levy Declaration"), who directly dealt with the decision to decline Plaintiffs' request to waive surrender fees.  (*See* ECF No. 18-2.)  The Levy Declaration states Eric Levy consults with other members of VALIC leadership and executive team, all of whom are in Houston, Texas, when considering requests such as Plaintiffs.  (ECF No. 18-1 at 3.)  The Levy Declaration also states: (1) all of VALIC's executive officers and key employees are located in Houston, Texas; (2) all VALIC meetings regarding the Plan occurred with or between VALIC persons based in Houston, Texas; and (3) all other "anticipated VALIC persons connected with the Complaint's allegations are in Houston Texas[.]"  (*Id.* at 3–4.)  Finally, the Levy Declaration also identified two former VALIC employees as third-party witnesses, with whom Eric Levy consulted regarding Plaintiffs' request, whose last known addresses are in Houston, Texas.  (*Id.*)

Plaintiffs argue this factor should be neutral because both parties have witnesses in their respective home states and a transfer of venue would merely shift the inconvenience to Plaintiffs.  (ECF No. 22 at 18–19.)  Plaintiffs contend their witnesses include "the Markhams, . . . Mr. Ozeroff, Mr. Batturaro[,] and the 19 [P]lan participants who lost part of their retirement savings."  (*Id.* at 18.)  Plaintiffs also identify Ruth Jackson ("Jackson") as a third-party witness in California, who was the only Markham representative engaged in some communications with

8

1    Defendants and would be outside the subpoena power of a Texas court.  (*Id.* at 19.)  In reply,

2    Defendants argue the witnesses with relevant knowledge are in Texas because the Complaint

3    focuses on VALIC's decision to impose surrender fees and does not allege VALIC fraudulently

4    induced Plaintiff into a contract.  (ECF No. 26 at 2.)

5         The Court agrees Plaintiffs' Complaint focuses on VALIC's internal decisions, and thus

6    VALIC's employees and former employees would have the most relevant knowledge in this

7    matter.  (*See* ECF No. 1 at 9–11.)  Additionally, Defendants identify more non-party witnesses

8    located in Texas who would have more relevant knowledge of material information.  (ECF No.

9    18-1 at 3.)  Although Plaintiffs identify nineteen plan participants and Jackson as key non-party

10   witnesses, Plaintiffs do not discuss what relevant information, if any, the Plan participants would

11   possess regarding VALIC's decision making process or transactions with VALIC.  (ECF No. 22

12   at 18); *see Guingao v. Datalogix Texas Inc.*, No. 2:14-CV-02103-SVW-EX, 2014 WL 12688862,

13   at *1 (C.D. Cal. June 5, 2014) (finding parties must establish "witnesses will be necessary to

14   resolve the parties' disputes" for courts to weigh the presence of the witnesses in a transfer

15   analysis).  Conversely, Defendants third-party witnesses were former VALIC employees with

16   whom Eric Levy consulted when making the decision to deny Plaintiffs' request and therefore

17   possess necessary information regarding parties' disputes.  (ECF No. 18-1 at 3); *see Guingao*,

18   2014 WL 12688862, at *1; *see also Welenco, Inc. v. Corbell*, No. CIV. S-13-0287 KJM, 2014

19   WL 130526, at *7 (E.D. Cal. Jan. 14, 2014) ("Convenience of nonparty witnesses is often the

20   most important factor in the [§] 1404(a) calculus.").

21        Plaintiffs additionally argue the Court should not be persuaded by the fact Defendants

22   employees reside in Texas because courts give little consideration to the convenience of witnesses

23   who are current employees of defendants.  (ECF No. 22 at 18 (citing *Guingao*, 2014 WL

24   12688862 at *2.)  However, the Court is unpersuaded, as litigation costs are reduced when the

25   venue is located near the most witnesses expected to testify, regardless of by whom they are

26   employed.  *See McCoy v. Stronach*, No. 1:12-cv-000983-AWI-SAB (PC), 2019 WL 6894429, at

27   *2 (E.D. Cal. Dec. 18, 2019) (citing *Park v. Dole Fresh Vegetables, Inc.*, 964 F. Supp. 2d 1088,

28   1095 (N.D. Cal. 2013)); *see also Hope v. Lunarlandowner.com, Inc.*, No. 2:20-CV-01783-TLN-

1  DB, 2022 WL 597579, at *5 (E.D. Cal. Feb. 28, 2022) (finding most potential witnesses were

2  likely to be in Southern District of Florida, thus weighing in favor of transfer, despite these

3  witnesses being the defendant's current and former employees).

4       Accordingly, the Court finds VALIC's internal decision-making process occurred in

5  Houston, Texas, within the Southern District of Texas, thus the greatest number of witnesses with

6  relevant knowledge of Plaintiffs' claims are in the Southern District of Texas.  Therefore, this

7  factor weighs in favor of transfer.

8                 D.     <u>Convenience of the Parties</u>

9       Defendants argue this factor weighs in favor of transfer because the cost of litigation will

10  be lower if litigation takes place in the Southern District of Texas.  (ECF No. 18-2 at 13–14.)

11  Plaintiffs argue this factor weighs against transfer due to the parties' contacts with the forum state

12  of California.  (ECF No. 22 at 15.)

13                *i.*   *Cost of Litigation in Each Forum*

14       Defendants argue they will incur more costs if litigation takes place in California because

15  many of the relevant witnesses are VALIC employees, located in Houston, Texas, who will have

16  to travel to California to appear before this Court.  (ECF No. 18-2 at 13–14.)  Defendants further

17  argue VALIC will incur "significant travel costs to appear in California" and "it is likely that at

18  least a half-dozen VALIC witnesses may have to travel [to California] if the matter is not

19  transferred." (*Id.* at 14.)  Plaintiffs argue VALIC has more resources than Plaintiffs, has offices

20  and employees in California, and regularly files litigation around the country, while Plaintiffs

21  only have one small office in California and no operations in Texas.  (ECF No. 22 at 17.)  That is,

22  due to the relative size and resources of the parties, Plaintiffs will be more burdened by a transfer

23  than Defendants will without such transfer.  (*Id.*)  Plaintiffs further argue Defendants "have not

24  made a sufficient showing that costs of litigation would be cheaper in Texas." (*Id.*)  In reply,

25  Defendants contend the cost of litigation would be cheaper in Texas because litigation would take

26  less time and require less travel from more witnesses.  (ECF No. 26 at 8.)

27       When determining the factor of convenience for parties, courts "may consider the physical

28  condition and the financial strength of each of the parties." *DeFazio v. Hollister Emp. Share*

1    *Ownership Tr.*, 406 F. Supp. 2d 1085, 1090 (E.D. Cal. 2005) (citing *Jones*, 211 F.3d at 499).

2    However, that one party has more funds or resources is not dispositive such that the larger party

3    must bear the burden of transfer.  *See In re Nissan N. Am., Inc. Litig.*, No. 18-cv-07292-HSG,

4    2019 WL 4601557, at *10 (N.D. Cal. Sept. 23, 2019).

5           In *In re Nissan*, the defendant was a car manufacturer, Nissan of North America, and the

6    plaintiffs were individuals who purchased a 2015 model of Nissan vehicles with defective brakes.

7    *Id.* at *1.  The plaintiffs brought the action individually and on behalf of nationwide and statewide

8    classes, consisting of those who owned the same 2015 model Nissan vehicle.  *Id.*  In arguing the

9    cost of litigation factor in a motion to transfer venue, the plaintiffs argued transferring the case

10   from California, where one plaintiff purchased the vehicle, to the Middle District of Tennessee,

11   where Nissan was headquartered, unfairly burdened the plaintiffs.  *Id.* at *10.  Plaintiffs argued

12   "transfer would unfairly shift the cost of litigation 'from the large corporations with national and

13   international presence to [the plaintiffs], who are individual purchasers of automobiles from

14   Defendants.'"  *Id.*  The court found the plaintiffs' argument unpersuasive, holding "litigation

15   costs would likely be lower if the case were litigated in the Middle District of Tennessee, given

16   that the majority of the nonresident Plaintiffs and potential witnesses would be geographically

17   closer to Tennessee than California."  *Id.*

18          In the instant case, similar to *In re Nissan*, and as discussed herein, most of the relevant

19   witnesses are located in Texas.  (ECF No. 18-2 at 14; ECF No. 26 at 8.)  The Court finds

20   Plaintiffs' argument that Defendants are better equipped to bear the cost of litigation because of

21   their national presence and larger resources is unpersuasive.  *See In re Nissan*, 2019 WL 4601557

22   at *10.  The Court finds litigation costs will be lower if the case is litigated in the Southern

23   District of Texas, given that a majority of potential witnesses will be geographically closer to

24   Texas than California.  Therefore, this factor weighs in favor of transfer.

25                            *ii. Parties' Contacts with the Forum*

26          Plaintiffs contend both parties have significant contact with the Eastern District of

27   California, as Markham's principal place of business is here, Defendants maintain an office

28   within this district, and Defendants have at least 200 employees throughout California.  (ECF No.

11

22 at 15.)  Plaintiffs also contend, while the alleged wrongful conduct by Defendants occurred in

Texas, the claim arises in either forum, as Plaintiffs were harmed in California.  (*Id.* at 16.)

Defendants do not dispute their contacts with the Eastern District of California.  (*See generally*

ECF Nos. 18-2, 26.)  However, Defendants argue the contacts relevant to this case are primarily

in Texas.  (ECF No. 26 at 11.)

Here, Defendants' purported wrongful conduct (the decision not to waive the surrender

fee) occurred in the Southern District of Texas.  However, because Plaintiffs reside in the Eastern

District of California, Plaintiffs were injured in the Eastern District of California.  Therefore, the

Court finds this factor is neutral.  *See, e.g.*, *Fink ex rel. Nation Safe Drivers Emp. Stock*

*Ownership Plan v. Wilmington Tr., N.A.*, 473 F. Supp. 3d 366, 375 (D. Del. 2020) ("On the one

hand, [the plaintiff] lives in Florida and therefore experienced whatever harms arose from these

events in Florida.  Additionally, all of [the plaintiff's] contacts with the Defendants occurred in

Florida.  On the other hand, [the plaintiff] alleges that acts relevant to the [wrongful conduct] took

place in Delaware.  Thus, this factor is neutral.").

In sum, the Court finds this factor weighs in favor of transfer.  Although Defendants have

contacts with the Eastern District of California, the cost of litigation tips the scale in favor of

transfer.

### E.      Ease of Access to the Evidence

Defendants argue the Court should grant transfer because "all records related to the

assessment of the surrender charges, the decision to assess those charges, and any other

documentary evidence conceivably related to the allegations in Plaintiffs' [C]omplaint is located

in Texas."  (ECF No. 18-2 at 15.)  In opposition, Plaintiffs contend Defendants' argument is

insufficient to merit transfer, arguing Defendants ignore that Plaintiffs' records are in California,

making this factor neutral.  (ECF No. 22 at 19–20.)

"As with witnesses, general allegations that transfer is needed for the ease of obtaining

records and books are not enough."  *Cal. Writer's Club v. Sonders*, No. C-11-02566 JCS, 2011

WL 4595020, at *15 (N.D. Cal. Oct. 3, 2011) (quoting *DeFazio*, 406 F. Supp. 2d at 1091)

(quotation marks omitted).  The moving party must show the "location and the importance" of the

1    records in question and the court should consider whether moving such evidence would cause any

2    hardships. *Id.* (quotation marks omitted). Additionally, other courts recognize the "ease of

3    access to documents does not weigh heavily in the transfer analysis, given that advances in

4    technology have made it easy for documents to be transferred to different locations." *Metz*, 674

5    F. Supp. 2d at 1149 (internal citations omitted).

6         Here, Defendants failed to meet their burden to demonstrate an ease of access to evidence

7    in the Southern District of Texas, other than stating Defendants' relevant records are in Texas.

8    *See DeFazio*, 406 F. Supp. 2d at 1091 (finding the defendant's general allegations that relevant

9    records and documents are generated and maintained in a certain district were insufficient).

10   Defendants have not claimed any hardship they might endure if they must transport or produce

11   documents in the Eastern District of California. *See Martinez*, 2017 WL 2722015 at *7

12   ("[N]either party specifically identifies any documentary evidence that is only available in hard

13   copy, or explains what hardship they would suffer by transporting or producing these documents

14   to a different district than where they are stored."). Either party could seemingly transfer these

15   documents to another location with modern technology. *See Friends of Scot., Inc. v. Carroll*, No.

16   C–12–1255 WHA, 2013 WL 1192956, at *3 (N.D. Cal. Mar. 22, 2013) ("[W]ith technological

17   advances in document storage and retrieval, transporting documents does not generally create a

18   burden."). Accordingly, the Court finds this factor is neutral.

19                         F.    Familiarity of Each Forum with the Applicable Law

20        All parties concede this factor is neutral, as both this Court and the Southern District of

21   Texas are equally qualified to decide an ERISA matter. (ECF No. 22 at 13; ECF No. 26 at 10);

22   *See Szegedy v. Keystone Food Products, Inc.*, No. CV 08-5369 CAS (FFMX), 2009 WL

23   2767683, at *7 (C.D. Cal. Aug. 26, 2009) (finding the plaintiff's claims under both Pennsylvania

24   and California law did not weigh either for or against transfer); *see also Zerez Holdings Corp. v.

25   Tarpon Bay Partners, LLC, et al.*, No. 2:17-CV-00029-TLN-DB, 2018 WL 402238, at *9 (E.D.

26   Cal. Jan. 12, 2018). Therefore, the Court finds this factor is neutral.

27   ///

28   ///

13

1          G.      Local Interest in the Controversy

2          Plaintiffs argue against transfer because California has a public policy that takes a strong

3     interest in: (1) protecting its citizens' rights; (2) monitoring its citizens' pension plans; and (3)

4     protecting plaintiffs' rights who enter into agreements in the state.  (ECF No. 22 at 24–25 (citing

5     *Jorgensen v. Scolari's of Cal., Inc.*, No. SACV 14-01211-CJC(RNBx), 2014 WL 12480261, at *3

6     (C.D. Cal. Nov. 12, 2014).)  Plaintiffs further argue Defendants did not cite any competing public

7     policy from Texas in its motion.  (ECF No. 22 at 25.)  Additionally, Plaintiffs argue the parties

8     entered into the relevant agreements in the Eastern District of California, thus weighing against

9     transfer.  (*Id.* at 13.)  In reply, Defendants argue a factor like a state's public policy is neutral

10    because "Plaintiffs seek to represent a nationwide class, [thus] every other state (including Texas)

11    has the same interest."  (ECF No. 26 at 10.)  Similarly, Defendants contend the Court should give

12    little deference to the location of the execution of the relevant agreements, as Plaintiffs do not

13    bring breach of contract claims and, as the proposed class is nationwide, class members will have

14    entered contracts in practically every state.  (ECF No. 26 at 10.)

15         Here, the Court finds this factor is neutral.  In a putative class action, such as the instant

16    case, multiple states — or potentially every state — has the same level of interest in protecting its

17    citizens rights.  *Hogan v. ADT, LLC*, No. CV 12-10558 (DMG) (FMOx), 2013 WL 12129856 at

18    *4 (C.D. Cal. May 23, 2013) ("[E]very state conceivably has an interest in a nationwide class

19    action . . . so the local interest and conflict of laws factors are neutral between districts.").

20    Additionally, although Defendants do not dispute the parties entered into the relevant agreements

21    in the Eastern District of California, this is not pertinent, as Plaintiffs are not claiming a dispute

22    with the agreement, and, as the proposed class is nationwide, class members will have entered

23    into contracts in practically every state.  *Id.* at *2 ("Because the contracts contain mostly standard

24    form language ('boilerplate'), the actual negotiation, and thus the importance of this factor, is

25    limited.  Moreover, as the proposed class is nationwide, contracts were negotiated and executed in

26    each of the 50 states.").  Accordingly, the Court finds this factor is neutral.

27    ///

28    ///

14

H.      Relative Court Congestion and Time of Trial in Each Forum

Defendants argue the Court should transfer the instant case to the Southern District of Texas because it is less congested than the Eastern District of California.  (ECF No. 18-2 at 18.)  In opposition, Plaintiffs acknowledge the Eastern District of California is more congested but contend the Southern District of Texas "does not resolve cases meaningfully quicker and this Court has not evidenced any administrative difficulty in this case."  (ECF No. 22 at 24.)  Plaintiffs further contend this factor is either neutral or only slightly favors transfer because the Eastern District of California works efficiently and on average only takes 1.1 months longer than the Southern District of Texas to resolve cases.  (*Id.* at 23–24.)  In reply, Defendants argue this factor favors transfer to the Southern District of Texas because the longer it takes to resolve cases the more expensive litigation becomes for the parties.  (ECF No. 26 at 8.)

The relevant factors courts consider in a motion to transfer venue are: (1) relative court congestion; and (2) time of trial in each forum.  *Baird v. OsteoStrong Franchising, LLC*, No. 2:20-cv-02010-TLN-DMC, 2022 WL 705883, at *6 (E.D. Cal. Mar. 9, 2022).

According to statistical tables available on the United States Courts website, as of December 31, 2021, the Eastern District of California had 1,338 pending actions per judgeship, while the Southern District of Texas had 763 pending actions per judgeship.  *U.S. District Courts- Combined Civil and Criminal Federal Court Management Statistics* (Dec. 31, 2021), available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison1231.2021.pdf (last accessed March 15, 2022).  Additionally, it takes one month longer on average, for the Court to reach disposition from filing in civil cases in the Eastern District of California than the Southern District of Texas.  *Id.*  Finally, Chief Judge Kimberly J. Mueller testified before the House Judiciary Committee on February 4, 2021, on the need for new federal court judgeships in the Eastern District of California, noting that this district has qualified for judicial emergency status for at least 20 years.  *Hearing on The Need for New Lower Court Judgeships, 30 Years in the Making,* 117th Cong. 2–3 (2021) (statement of Chief Judge Mueller, E.D. Cal.), available at http://www.caed.uscourts.gov/caednew/assets/File/Chief%20Judge%20Kimberly%20J_%20Mueller's%20Written%20Statement_2_21.pdf (last accessed March 15, 2022.)  Accordingly, the Court

1    finds the Eastern District of California is significantly more congested than the Southern District

2    of Texas and therefore finds this factor favors transfer.

3                          I.        The Presence of a Forum-Consent Clause

4          The parties agree the Service Provider Agreement ("SPA") contains a permissive forum-

5    consent clause consenting to the jurisdiction of Texas courts, federal and state.  (ECF. No. 22 at

6    21; ECF No. 26 at 5.)  Defendants argue the Court should afford significant weight to the

7    permissive forum-consent clause.  (ECF No. 18-2 at 13.)  In opposition, Plaintiffs contend a

8    permissive forum-consent clause is not enough for the Court to grant transfer.  (ECF No. 22 at

9    22–23.)  In reply, Defendants argue the Court should give the permissive forum-consent clause

10   significant weight because "it accords the parties' understanding about where litigation would

11   proceed at the time they contracted" and shows Texas is not an "inconvenient, unforeseen, or

12   unreasonable forum."  (ECF No. 26 at 5.)

13         Although not controlling, courts may weigh permissive forum-consent clauses as a

14   "significant factor" favoring a transfer under § 1404(a).  *Almont Ambulatory Surgery Ctr., LLC v.*

15   *UnitedHealth Grp., Inc.*, 99 F. Supp. 3d 1110, 1166 (C.D. Cal. 2015); *see also First Interstate*

16   *Bank v. VHG Aviation, LLC*, 291 F. Supp. 3d 1176, 1184 (D. Or. 2018); *PennyMac Loan Servs.,*

17   *LLC v. Black Knight, Inc.*, No. 2:19-cv-09526-RGK-JEM, 2020 WL 5985492, at *7 (C.D. Cal.

18   Feb. 13, 2020).  Parties with a permissive forum clause have not agreed "as to the most proper

19   forum" but have consented to the jurisdiction of certain courts.  *Almont Ambulatory Surgery Ctr.*,

20   99 F. Supp 3d at 1166.

21         In the instant matter, both parties agree the clause in the SPA is permissive, not

22   mandatory.  (ECF. No. 22 at 21; ECF No. 26 at 5.)  As such, both parties consented to the

23   jurisdiction of Texas courts.  *See Almont Ambulatory Surgery Ctr.*, 99 F. Supp 3d at 1166.

24   However, the presence of a permissive forum-consent clause, alone, is not dispositive in requiring

25   the Court to grant transfer of this case.  *Tech. Credit Corp. v. N.J. Christian Acad., Inc.*, 307 F.

26   Supp. 3d 993, 1007 (N.D. Cal. 2018) ("A permissive clause allows suit to be brought in a

27   particular forum, but does not preclude litigation elsewhere.").  Nevertheless, the Court will

28   consider the permissive forum-consent clause as a significant factor in its transfer analysis.  *See*

16

1    *First Interstate Bank*, 291 F. Supp. 3d at 1184 (When two parties expressly agree to a permissive

2    forum-consent clause, and one party sues the other, "it would thwart the first party's bargain and

3    legitimate expectations if the second party were to obtain a transfer to a different forum merely

4    because the second party persuaded a court that the other forum would be more convenient."); *see*

5    *also PennyMac Loan Servs*, 2020 WL 5985492 at *7 (holding the presence of a permissive

6    forum-consent clause was a "significant factor" in the courts ultimate decision to grant defendants

7    motion to transfer.)  Therefore, the Court finds, since the parties consented to jurisdiction in

8    Texas, this factor favors transfer.

9         Therefore, on balance, the private and public factors weigh in favor of transferring this

10    action.  Accordingly, the Court GRANTS Defendants' Motion to Transfer Venue.  (ECF No. 18.)

11       **IV.**      **CONCLUSION**

12         Based on the foregoing, the Court hereby GRANTS Defendants' Motion to Transfer

13    Venue (ECF No. 18) and DENIES as moot Defendants' Motions to Dismiss (ECF Nos. 19, 20).

14    The Court hereby transfers the instant action to the U.S. District Court for the Southern District of

15    Texas.  The Clerk of the Court is directed to close this case.

16         IT IS SO ORDERED.

17    **DATED:  March 24, 2022**

18

19

20                       Troy L. Nunley

21                       United States District Judge

22

23

24

25

26

27

28