United States District Court
Southern District of Texas
**ENTERED**
October 05, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| D.L. MARKHAM, DDS, MSD, INC., 401(K) PLAN and D.L. MARKHAM, DDS, MSD, INC., as plan administrator, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-22-0974 |
| THE VARIABLE ANNUITY LIFE INSURANCE COMPANY, VALIC FINANCIAL ADVISORS, INC., and VALIC RETIREMENT SERVICES COMPANY, | § § § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, the D.L. Markham, DDS, MSD, Inc. 401(k) Plan ("Markham Plan" or "the Plan") and D.L. Markham, DDS, MSD, Inc. ("Markham") (collectively, "Plaintiffs"), filed this action in the United States District Court for the Eastern District of California, against defendants The Variable Annuity Life Insurance Company ("VALIC"), VALIC Financial Advisors, Inc. ("VALIC Financial"), and VALIC Retirement Services Company ("VALIC Retirement") (collectively, "Defendants") on January 4, 2021.[1] Plaintiffs challenge a surrender fee that VALIC assessed against the Plan's assets. Plaintiffs seek recovery of the fee under the

---

[1]Class Action Complaint ("Complaint"), Docket Entry No. 1, p. 1. For purposes of identification all page numbers reference the pagination imprinted at the top of the page by the court's Electronic Case Filing ("ECF") system.

Employee Retirement Income Security Act ("ERISA").[2]   Plaintiffs also seek to represent the class of similarly situated persons whose contracts authorized VALIC to collect a surrender fee.[3] Pending before the court are the Motion to Dismiss and/or Motion to Strike of Defendant The Variable Annuity Life Insurance Company (the "VALIC MTD" or "VALIC Motion to Dismiss") (Docket Entry No. 55)[4] and the Motion to Dismiss of Defendant VALIC Financial Advisors, Inc. ("VALIC Financial MTD" or "VALIC Financial Motion to Dismiss") (Docket Entry No. 56).  For the reasons set forth below, the VALIC Motion to Dismiss will be granted.  Because the court will dismiss the Complaint as to all defendants based on the VALIC Motion to Dismiss, the VALIC Financial Motion to Dismiss will be denied as moot.

## I.   **Factual Allegations and Procedural Background**

Markham is a dental practice located in Auburn, California.[5] The Markham Plan is an employee pension benefit plan within the meaning of ERISA.[6]   Markham, the Plan's sponsor, established the Plan on January 1, 2017, to provide pension benefits to its

---

[2]Id. at 9-10.

[3]Id. at 6-9.

[4]Although the VALIC MTD was filed by VALIC, it asserts that the arguments apply equally to both remaining defendants, VALIC and VALIC Financial.  VALIC's MTD, Docket Entry No. 55, p. 7 n.1.

[5]Complaint, Docket Entry No. 1, p. 2.

[6]Id.; VALIC's MTD, Docket Entry No. 55, p. 10; 29 U.S.C. § 1002(2)(A).

employees.[7]  Markham is also the Plan's "administrator" and the
Plan's "named fiduciary" as those terms are defined in ERISA.[8]
VALIC is an insurance company that offers tax-qualified retirement
plans.[9]  VALIC Financial is a subsidiary of VALIC.[10]

On May 18, 2018, Markham entered an agreement with VALIC to
maintain the Plan on VALIC's retirement platform.[11]  Markham
selected the Portfolio Director Group Fixed and Variable Deferred
Annuity Contract ("the PD Contract") as the Plan's annuity
contract.[12] VALIC's "Annual Administrative Service Fee" was between
$2,500 and $12,000.[13]  The PD Contract also provided for a 5%
surrender charge on transfers out of the contract on amounts
contributed in the previous 60 months.[14]  The PD Contract states
that:

> The surrender charge may be waived or reduced uniformly
> on all Participant Accounts for contracts issued under
> certain plans or arrangements which are expected to
> result in administrative cost savings . . . We may waive
> any withdrawal or surrender charge attributable to

---

[7]Complaint, Docket Entry No. 1, p. 2.

[8]Id.; VALIC MTD, Docket Entry No. 55, p. 10; 29 U.S.C.
§ 1002(16)(A); 29 U.S.C. § 1102(a)(2).

[9]Complaint, Docket Entry No. 1, pp. 2-3.

[10]Id. at 3.

[11]Id.

[12]Id. at 4.

[13]Id. at 3.

[14]Id. at 4.

-3-

Purchase Payments received during specific periods of
time, and under conditions and limitations set by Us.[15]

In January of 2020 Markham, dissatisfied with VALIC's investment
returns and quality of services, informed VALIC that it intended to
terminate the PD Contract and select a new service provider.[16]
Markham submitted a request asking VALIC to allow it to withdraw
the Plan's assets without triggering a surrender fee.[17]  VALIC's
Executive Review Committee reviewed the request, and VALIC
ultimately informed Markham that it had decided to impose the
surrender fee.[18]  Markham transferred all Plan assets from VALIC's
platform to Markham's new service provider.[19]   VALIC retained
$20,703 of the assets as a surrender fee, approximately 4.5% of the
Plan's assets.[20]

VALIC Financial Statements from 2019 indicate "that it held
$3,945,000,000 in group annuities that include a surrender charge
of five percent or more."[21]   Based on that figure, Plaintiffs
estimate that there were over 8,000 persons with VALIC contracts
that include a surrender charge.[22]

---

[15]Id. at 4-5.

[16]Id. at 4.

[17]Id. at 5.

[18]Id.

[19]Id.

[20]Id.

[21]Id. at 7

[22]Id.

On January 4, 2021, Markham and the Plan brought this action in the Eastern District of California against VALIC, VALIC Financial, and VALIC Retirement.[23]   Plaintiffs allege that collecting the surrender fee was a breach of VALIC's fiduciary duty to the Plan under ERISA § 1104(a) and that the PD Contract's term authorizing the surrender fee made the PD Contract a prohibited transaction within the meaning of ERISA § 1106(a).[24]   Plaintiffs seek to represent a class of similarly situated persons, described in the Complaint as:

> All ERISA covered plan administrators/plans that entered an agreement with VALIC in which VALIC had discretion to impose a surrender charge on outgoing transfers and which paid VALIC a fee of any kind since January 4, 2018.[25]

Plaintiffs also seek to represent a "Self-Dealing Subclass," defined as:

> All ERISA covered plan administrators/plans that entered an agreement with VALIC in which VALIC imposed the surrender charge on outgoing transfers since January 4, 2018.[26]

Plaintiffs seek an accounting by VALIC and disgorgement of "all losses caused to Class Members' plans — including all fees retained — as a result of their knowing participation in a prohibited transaction" and restoration of "all losses caused to the Subclass

---

[23]Id. at 1-3.

[24]Id. at 9-10.

[25]Id. at 6.

[26]Id. at 6-7.

Members' plans as a result of their self-dealing prohibited transaction as a fiduciary in imposing the surrender fee."[27] Plaintiffs also seek attorneys' fees.[28]

On March 25, 2022, the United Stated District Court for the Eastern District of California transferred the case to this court under 28 U.S.C. § 1404(a).[29]  VALIC filed its Motion to Dismiss on April 22, 2022.[30]  VALIC argues that both counts fail to state a legally cognizable claim.[31]  Regarding Markham's fiduciary breach claim under ERISA § 1104(a), Markham argues that it is not a fiduciary act to collect predetermined fees that are stated in the contract, and therefore it could not be a fiduciary breach to do so.[32]  As to the prohibited transaction claim, VALIC argues that ERISA's prohibited transaction provision only applies to transactions with a "party in interest" and that VALIC does not meet the party-in-interest definition.[33]  In the alternative, VALIC requests that the court strike portions of the class action allegations regarding administrative fees.[34]  On May 23, 2022, the

---

[27]Id. at 10.

[28]Id. at 11.

[29]Order, Docket Entry No. 36, p. 17.

[30]VALIC MTD, Docket Entry No. 55, p. 1.

[31]Id. at 7-8.

[32]Id. at 17, 22.

[33]Id. at 22.

[34]Id. at 28-29.

Plaintiffs filed The Markham Plaintiffs' Opposition to Defendant VALIC's Motion to Dismiss and/or Motion to Strike ("Plaintiffs' Response") (Docket Entry No. 58). On June 6, 2022, VALIC filed its Reply in Support of Motion to Dismiss and/or Motion to Strike of Defendant The Variable Annuity Life Insurance Company ("VALIC's Reply") (Docket Entry No. 61).

On April 22, 2022, VALIC Financial filed its separate Motion to Dismiss of Defendant VALIC Financial Advisors, Inc. requesting that the Complaint be dismissed as to it.[35] VALIC Financial argues that Plaintiffs cannot state a legally cognizable claim against it because it was not a party to the PD Contract, never provided services to Plaintiffs, and never received fees from Plaintiffs.[36] On May 23, 2022, Plaintiffs filed The Markham Plaintiffs' Opposition to Defendant VALIC Financial Advisors' Motion to Dismiss ("Plaintiffs' Response to VALIC Financial") (Docket Entry No. 59). On June 6, 2022, VALIC Financial filed Defendant VALIC Financial Advisors, Inc.'s Reply in Support of Motion to Dismiss ("VALIC Financial's Reply") (Docket Entry No. 60).

## II.   **Legal Standard**

## A.   **Rule 12(b)(6)**

"Rule 12(b)(6) entitles a defendant to seek dismissal if the plaintiff fails 'to state a claim upon which relief can be

---

[35]VALIC Financial MTD, Docket Entry No. 56, pp. 1-2.

[36]Id. at 12.

granted.'" <u>King v. Baylor University,</u> 46 F.4th 344, 355 (5th Cir. 2022). In evaluating a motion to dismiss, the court should "assume [the] veracity [of well-pleaded factual allegations] and then determine whether they plausibly give rise to an entitlement to relief." <u>Ashcroft v. Iqbal,</u> 129 S. Ct. 1937, 1950 (2009). But bare legal conclusions are "not entitled to the assumption of truth." <u>Id.</u>

## B.   ERISA Fiduciary Duty

ERISA requires a plan's fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a). In addition to a plan's named fiduciary, ERISA defines a person as a plan fiduciary if:

> (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "It is not enough for Plaintiffs to show that [Defendant] acted in a general fiduciary capacity." <u>Tiblier v. Dlabal,</u> 743 F.3d 1004, 1008 (5th Cir. 2014). To allege a breach of fiduciary duty, "Plaintiffs must establish that [Defendant] acted as a fiduciary with regard to the specific transaction about which they complain." <u>Id.</u>

"[A] plan administrator is not an ERISA fiduciary when negotiating its compensation with a prospective customer." <u>Santomenno v. Transamerica Life Ins. Co.,</u> 883 F.3d 833, 837 (9th

-8-

Cir. 2018).[37]  Likewise, a "'service provider cannot be held liable for merely accepting previously bargained-for fixed compensation.'" <u>Depot, Inc. v. Caring for Montanans, Inc.</u>, 915 F.3d 643, 655 (9th Cir. 2019).  But sometimes an "agreement may give [a service provider] such control over factors that determine the actual amount of its compensation that the person thereby becomes an ERISA fiduciary with respect to that compensation." <u>F.H. Krear & Co.</u>, 810 F.2d at 1259.[38]

## C.   ERISA Prohibited Transactions

"Responding to deficiencies in prior law regulating transactions by plan fiduciaries, Congress enacted [29 U.S.C. § 1106(a)(1)], which supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, [§ 1104(a)]." <u>Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.</u>, 120 S. Ct. 2180, 2184-85 (2000).  Section 1106(a)(1)(C) prohibits a plan fiduciary from knowingly "engag[ing] in a transaction [for the] . . . furnishing of goods, services, or facilities [with] a party in

---

[37]<u>See also F.H. Krear & Co. v. Nineteen Named Trustees</u>, 810 F.2d 1250, 1259 (2d Cir. 1987) ("When a person who has no relationship to an ERISA plan is negotiating a contract with that plan . . . [he] is not an ERISA fiduciary with respect to the terms of the agreement for his compensation.").

[38]<u>See also American Federation of Unions Local 102 Health & Welfare Fund v. Equitable Life Assurance Society of the United States</u>, 841 F.2d 658, 663 (5th Cir. 1988) ("Because Holden's commissions are based on a percentage of claims paid, and Holden exercised discretion over which claims would be paid, we hold he is a fiduciary with respect to his commissions.").

interest." ERISA defines a "party in interest" to include "a person providing services to such plan." 29 U.S.C. § 1002(14)(B). A service relationship with a party in interest must fit into one of the exemptions listed in § 1108 to avoid § 1106(a)'s prohibition. Section 1108(b)(2), sometimes called the exemption for necessary services, permits a plan fiduciary to contract "with a party in interest for . . . services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor."

ERISA authorizes civil actions by "a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter . . . or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce [those] provisions." 29 U.S.C. § 1132(a)(3). In Harris Trust and Savings Bank, the Supreme Court held that § 1132(a)(3) allows a plan fiduciary to bring a civil action against a nonfiduciary who engages with the fiduciary in a § 1106(a) prohibited transaction. 120 S. Ct. at 2189-91.

### III. **Analysis**

#### A. **VALIC's Motion to Dismiss**

The Complaint alleges that VALIC violated its § 1104(a) fiduciary duty by collecting the fee.[39] The Complaint also alleges that the Plan's contract with VALIC was a § 1106(a) prohibited

---

[39]Complaint, Docket Entry No. 1, p. 10.

transaction because VALIC was a party in interest and because no § 1108 exemption applies, due to the impermissible surrender fee.[40]

VALIC argues that the fiduciary-duty claim fails because collecting the fee was not a fiduciary act, and that the prohibited-transaction claim fails because VALIC was not a party in interest when it entered the contract.[41]

### 1.    Section 1104(a) ERISA Fiduciary Duty

The Complaint alleges that collecting the fee was a breach of VALIC's fiduciary duty.  Plaintiffs argue that VALIC acted as a fiduciary within the meaning of § 1002(21)(A)(i) "because it exercised discretionary control" and "had authority over the management of the plan and distribution of plan assets" and within the meaning of § 1002(21)(A)(iii) because VALIC "had discretionary authority in the administration of the plan."[42]  These arguments are based on the Complaint's allegations that VALIC, "[p]ursuant to the terms of its agreement, [] has the discretion to" waive the fee and that "VALIC deliberated on whether to waive the surrender fee."[43]

---

[40]Id. at 9.

[41]VALIC MTD, Docket Entry No. 55, pp. 17, 23.  VALIC also argues that the Complaint's § 1106(a) fails because the prohibited transaction was not a knowing one and because Plaintiffs seek relief not authorized by the statute.  Id. at 25-27.  The court need not address these arguments because it concludes that VALIC was not a party in interest when it initially contracted with the Plan.

[42]Plaintiffs' Response, Docket Entry No. 58, p. 28.

[43]Complaint, Docket Entry No. 1, p. 10.  The Complaint does not appear to allege that VALIC acted as a fiduciary in negotiating the
(continued...)

-11-

VALIC argues that Plaintiffs' fiduciary duty claim fails because VALIC did not act as a fiduciary in collecting the surrender fee.[44]

Courts have held that a plan's service provider does not act as an ERISA fiduciary by "'merely accepting previously bargained-for fixed compensation.'" E.g., Depot, 915 F.3d at 655.[45]   In Santomenno the plaintiffs' employers contracted with the defendant for management and operation of retirement plans.  883 F.3d at 835.  The defendant was compensated as a fixed percentage of the managed assets per a specific fee schedule in the contracts.  Id. at 836.  The plaintiffs argued that withdrawal of these fees was a fiduciary act because the defendant "'exercises any authority or control respecting management or disposition of'" assets.  Id. at 839 (citing § 1002(21)(A)(i)).  The court held that the defendant's collection of predetermined fees was not a fiduciary act, stating that "withdrawal of predetermined fees . . . amount[s] to control respecting management or disposition of [plan] assets, in only the hollowest sense of control."  Id. at 841 (internal quotation marks omitted).

_____

[43](...continued)
surrender fee.  A service provider does not act as a fiduciary in negotiating its compensation.  Santomenno, 883 F.3d at 837.

[44]VALIC MTD, Docket Entry No. 55, p. 21.

[45]See also Danza v. Fidelity Management Trust Co., 533 F. App'x 120, 126 (3d Cir. 2013) (holding that a defendant did not act as a fiduciary by "collecting its compensation . . . [because] at the time it collected the fee, [the defendant] had no actual control or discretion over the transaction at issue — the price of the previously bargained-for fees").

Collecting fees can be a fiduciary act where the amount depends on the factors within the service provider's control. In Equitable Life the defendant issued a group life insurance policy to the plaintiff fund. 841 F.2d at 660. The defendant was appointed as administrator of the fund and had authority to grant or deny claims under the policy. Id. at 662-63. The court held that the defendant acted as a fiduciary in collecting the commissions because they were "based on a percentage of claims paid, and [he] exercised discretion over which claims would be paid." Id.

The court is persuaded that the logic of Depot and Santomenno applies here. Just as the Santomenno defendant collected a fixed percentage of managed assets as specified in the agreement, VALIC retained a fixed percentage of the Plan's assets as a surrender fee that was disclosed in the Policy. Plaintiffs attempt to distinguish these cases by arguing that they dealt with the § 1002(21)(A)(i) fiduciary definition (a person exercising control over assets) and not the § 1002(21)(A)(iii) fiduciary definition (a person exercising discretion in plan administration). But Santomenno's reasoning applies to both provisions. Just as the collection of predetermined fees fits "only the hollowest sense of control,"[46] that collection is also not an exercise of "discretion" except in the most formal sense that VALIC could choose to accept less payment than it was owed.

---

[46]Santomenno, 883 F.3d at 841.

This action is not analogous to Equitable Life. Unlike the defendant in Equitable Life, VALIC lacked control or discretion to influence the factors that determined the surrender fee to which it was entitled. The surrender fee was capped at 5 percent of "transfers out of the contract on amounts contributed in the previous 60 months,"[47] and it was up to the Plan to decide the amount of assets to deposit and withdraw in its accounts with VALIC. By contrast the defendant in Equitable Life could grant or deny claims, thereby increasing the sum on which he earned commissions.

Even though the contractually permitted surrender fee did not depend on VALIC's actions, Plaintiffs argue that collection of the fee was a fiduciary act. Plaintiffs contend that the collection falls into either the § 1002(21)(A)(i) or (iii) fiduciary definition because "VALIC secured for itself the discretion to waive the fee" and because "VALIC exercises discretion in deciding whether to pay itself a 5% surrender charge."[48]

Most of the cases cited by Plaintiffs in support of this argument are similar to Equitable Life. The contracts in those cases gave the defendants a role that enabled them to change their compensation, and not merely because they could waive a fee or accept a lesser payment. But two of the cases provide some support

---

[47]Complaint, Docket Entry No. 1, p. 4.

[48]Plaintiffs' Response, Docket Entry No. 58, pp. 30-31.

for Plaintiffs' argument that the authority to waive a fee can make it a fiduciary act to collect the fee.  In <u>Hi-Lex Controls, Inc. v. Blue Cross Blue Shield of Michigan</u>, 751 F.3d 740, 744 (6th Cir. 2014), the defendant argued that it was not a fiduciary act to collect certain fees that "were part of the standard pricing arrangement" included in its contract with the plaintiff plan.  The court rejected this argument, emphasizing that "imposition of the [] Fees was not universal" and that they "were sometimes waived entirely."  <u>Id.</u>  Similarly in <u>Charters v. John Hancock Life Insurance Co.</u>, 583 F. Supp. 2d 189, 197 (D. Mass. 2008), the defendant "had the sole authority to set the administrative maintenance charge, limited only by a maximum charge" of .75% of the invested assets.  Based on this "discretion," the court held that it was a fiduciary act to collect those fees.  <u>Id.</u> at 198.

To the extent that <u>Hi-Lex</u> and <u>Charters</u> imply that the ability to waive a fee makes it a fiduciary act to collect the surrender fee, the court is not persuaded.  There is no practical difference between a contract that permits a provider to set a fee within a contractually bounded range, as in <u>Charters</u>; a contract that sets a fixed fee but specifies that the fee is waivable, as in this case; and a contract that sets a fixed fee.  Each contract allows the provider to collect up to a maximum fee or percentage, and the provider can always agree to accept less compensation or waive the fee entirely.  The contracts in <u>Equitable Life</u> and similar cases are different because they did not dictate the maximum fee or

-15-

percentage that the provider could collect. Instead the maximum fee depended in part on the defendant's discretionary actions.

Because VALIC's surrender fee was a predetermined fee established in the parties' contract, VALIC did not act as a fiduciary within the meaning of 29 U.S.C. § 1002(21)(A) by collecting the fee. Plaintiffs have therefore failed to state a legally cognizable claim that collecting the surrender fee breached VALIC's fiduciary duty under ERISA.

## 2.   Section 1106(a) Prohibited Transaction with a Party in Interest

The Complaint alleges that VALIC knowingly engaged in a transaction prohibited by ERISA under 29 U.S.C. § 1106(a).[49] VALIC argues that there was no § 1106(a) prohibited transaction because it was not a party in interest when it initially contracted.[50] Plaintiffs' Response also argues that the subsequent payment of predetermined fees under that initial contract was a separate transaction subject to § 1106(a) scrutiny.[51]

### a.   The Initial Negotiations and Contract

Section 1106(a) prohibits transactions with parties in interest. VALIC argues that it was not a party in interest because it had no relationship with the Plan or Markham before it

---

[49]Complaint, Docket Entry No. 1, p. 9.

[50]VALIC MTD, Docket Entry No. 55, pp. 23-24.

[51]Plaintiffs' Response, Docket Entry No. 58, pp. 23-24.

-16-

contracted to provide services.[52]   Plaintiffs respond that the statute's definition of party in interest includes all service providers, whether or not they have a prior relationship with the plan.[53]

Section 1002(14)(B) defines a party in interest to include "a person providing services to such plan."  The issue is whether that implicitly means a person <u>already</u> providing services to such plan at the time of the challenged transaction.

Because the statute does not further define any part of the phrase "person providing services to such plan," the court must discern the "plain meaning of [the phrase], informed by statutory context."  <u>See Gallardo By and Through Vassallo v. Marstiller,</u> 142 S. Ct. 1751, 1759 (2022).  The word "providing," used to describe a person or entity, would most commonly be used to describe a person who has started providing something.  For example, "the company providing my insurance" would refer to one's current insurer.  But it would not always be unusual to use "providing" to describe a person who may soon start doing so.  One might refer to the caterer for an upcoming event as "the caterer providing food at Friday's event," but this would be an odd usage if there were no agreement to do so.  Another set of examples are United States statutes governing the allocation of certain grants that require

---

[52]VALIC MTD, Docket Entry No. 55, pp. 23-24.

[53]Plaintiffs' Response, Docket Entry No. 58, pp. 20-21.

-17-

that priority be given to "proposals providing services to . . . underserved populations." <u>See</u> 34 U.S.C. § 12421(3). These do not refer to ongoing services. One might also use a present tense form of "provide" to generically describe a company's services, like "VALIC provides investment services" or "VALIC is a company providing retirement investment services to employers."

Therefore the language "a person providing" does not on its own exclude either reading. But the qualifier "to such plan" limits the natural reading of providing services in Section 1002(14). Describing a caterer as "a person providing lunch <u>to the organization</u>" or a company as "the person providing <u>my</u> life insurance" would make no sense if there were no agreement to provide those services. One would not normally describe someone as "a person providing services to [a specific entity]" when the provider has not yet begun or at least reached an agreement with the entity to provide the services.

Nearby parts of the statute also help discern the definition's meaning. Section 1002(14) includes in the "party in interest" definition "any [plan] fiduciary," "an employer any of whose employees are covered by such plan," and "an employee organization any of whose members are covered by such plan." The common theme appears to be that these are insider groups that could improperly influence the fiduciary's decisions about how to invest plan assets. The Supreme Court has recognized this, stating that "Congress defined 'party in interest' to encompass those entities

-18-

that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." Harris, 120 S. Ct. at 2185. In Lockheed Corp. v. Spink, 116 S. Ct. 1783, 1791 (1996), the Court described § 1106(a) prohibited transactions as "commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." A service provider that lacks a preexisting relationship with the plan does not pose this same "insider" risk.

Plaintiffs cite Department of Labor ("DOL") regulations that favor their reading. In 2012 the DOL issued regulations interpreting the § 1108(b)(2) exemption for necessary services.[54] The regulations explain that in order to fall within the § 1108(b)(2) exemption, a contract for services with a pension plan must meet specified disclosure requirements.[55] The disclosure requirements are not at issue here, but in an overview of the regulation, the DOL stated that all service contracts with service providers would be prohibited by § 1106(a) were it not for the § 1108 exemptions:

> The furnishing of goods, services, or facilities between a plan and a party in interest to the plan generally is prohibited under section [1106(a)(1)(C)] of ERISA. As a result, a service relationship between a plan and a service provider would constitute a prohibited transaction, because any person providing services to the

---

[54]Reasonable Contract or Arrangement Under Section 408(b)(2) - Fee Disclosure ("Pension Disclosure Regulations"), 77 Fed. Reg. 5632 (Feb. 3, 2012).

[55]Id. at 5655-56.

<u>plan is defined by ERISA to be a "party in interest" to
the plan.</u> However, section [1108(b)(2)] of ERISA exempts
certain arrangements between plans and service providers
that otherwise would be prohibited transactions under
section [1106] of ERISA.   (Emphasis added.)[56]

Plaintiffs argue that the statute's "party in interest"
definition is at least ambiguous and that the court should
therefore give <u>Chevron</u> deference to the DOL's interpretation.
<u>Chevron</u> deference applies "if the statute is silent or ambiguous
with respect to the specific issue."   <u>Chevron, U.S.A., Inc. v.
National Resources Defense Council, Inc.</u>, 104 S. Ct. 2778, 2782
(1984).   If there is ambiguity, "the question for the court is
whether the agency's answer is based on a permissible construction
of the statute."   <u>Id.</u>

In conjunction with their argument about the pension
regulations, Plaintiffs point to similar amendments made by
Congress in the Consolidated Appropriations Act of 2021.
Plaintiffs argue that by passing the amendments, "Congress has
since confirmed the DOL's regulatory interpretation of
§ 1106[406]."[57]   The pension regulations required pension plan
service providers to supply plan fiduciaries with additional
disclosures, which focused on indirect compensation received by the

---

[56]<u>Id.</u> at 5632.   This statement is in the DOL's "Overview of
Final Regulation and Public Comments," which is in the Federal
Register at the listed citation but not codified in the Code of
Federal Regulations.

[57]Plaintiff's Response, Docket Entry No. 58, p. 19.

service provider.[58] The regulations implement this requirement by stating that "[n]o contract or arrangement for services between a [pension plan] and a covered service provider, nor any extension or renewal, is reasonable within the meaning of section 1108(b)(2) . . . unless the [disclosure requirements] are satisfied." 29 C.F.R. § 2550.408b-2(c)(1)(i). In the Consolidated Appropriations Act of 2021, Congress amended the § 1108(b)(2) exemption by adding that "[n]o contract or arrangement for services between a [group health plan] and a covered service provider, and no extension or renewal of such a contract or arrangement, is reasonable within the meaning of this paragraph unless the [disclosure requirements] are met." 29 U.S.C. § 1108(b)(2)(B)(i); Pub. L. 116-260, pp. 2895, 2897.

Unlike the DOL's overview of the pension regulations, the congressional amendments do not state that all service relationships with plans would be prohibited by § 1106 absent an exemption. Although not fully explained, Plaintiffs' argument appears to be (1) that Congress was aware of the DOL's regulations that require pension plan service providers using the § 1108(b)(2) exemption to make indirect compensation disclosure, (2) that the regulations were intended to and do operate as disclosure requirements for all pension service providers, and (3) that Congress implemented a similar statutory condition that requires

---

[58]Pension Disclosure Regulations, 77 Fed. Reg. at 5655-56.

essentially the same disclosures from group health plans' service providers using the § 1108(b)(2) exemption.  By choosing to implement very similar disclosure requirements using nearly identical language, Congress must therefore have intended a similar scope — that all service providers of group health plans would have to make the required disclosures.  That would mean that all those service providers are parties in interest because the disclosure requirements only apply to transactions that require a § 1108 exemption, i.e., only transactions with parties in interest.

Although the similarity of the Congressional amendments to the pension regulations may indicate that Congress intended to enact a similar disclosure regime for group health plans' service providers, that would be a remarkably subtle and indirect way of expanding the reach of § 1106(a)'s prohibition to all service contracts, including ones not even subject to the disclosure requirements.  Congress could accomplish that with a minor change to the § 1002(14) party-in-interest definition.  The court is not persuaded that Congress intended to broaden the party-in-interest definition to include every service provider for purposes other than group health plan disclosure requirements.

The Fifth Circuit has not addressed this question, and the courts that have done so are split, grappling with many of the same arguments explained above.  A majority of courts have adopted VALIC's reading.  Ramos v. Banner Health, 1 F.4th 769, 787 (10th Cir. 2021); see also Danza v. Fidelity Management Trust Co., 533

-22-

F. App'x 120, 125 (3d Cir. 2013); <u>Sellers v. Anthem Life Insurance Co.</u>, 316 F. Supp. 3d 25, 33-34 (D.D.C. 2018).[59]  For example, in <u>Ramos</u> the Tenth Circuit concluded that "some prior relationship must exist between the fiduciary and the service provider to make the provider a party in interest."  1 F.4th at 787.

But in <u>Braden v. Wal-Mart Stores, Inc.</u> the Eighth Circuit held that a service contract was subject to § 1106(a)'s prohibition because the provider was a party in interest based on that same contract.  588 F.3d 585, 600-601 (8th Cir. 2009) (adopting this reading despite the argument that it "renders virtually any business between a covered plan and a service provider a prima facie 'prohibited transaction'").  A few district courts have reached the same conclusion.[60]

---

[59]<u>See also Chavez v. Plan Benefit Services, Inc.</u>, Cause No. AU-17-CA-00659-SS, 2018 WL 6220119, at *3 (W.D. Tex. Sept. 12, 2018) ("Defendants were not parties in interest when they initially contracted to provide services because, at that time, they were not yet 'providing services to the plan.'"); <u>Patrico v. Voya Financial, Inc.</u>, No. 16 Civ. 7070(LGS), 2018 WL 1319028, at *6 (S.D.N.Y. March 13, 2018).

[60]<u>See Comerica Bank for DALRC Retiree Benefit Trust v. Voluntary Employee Benefits Associates, Inc.</u>, No. 1:09-cv-1164-WSD, 2012 WL 12948705, at *18, n.27 (N.D. Ga. Jan. 11, 2012) ("The statutory language does not say that the contract that causes the service provider to be a party in interest must be different than the prohibited transaction."); <u>Ronches v. Dickerson Employee Benefits, Inc.</u>, Case No. CV 09-04279 MMM (PJWx), 2009 WL 10669571, at *18 (C.D. Cal. Oct. 30, 2009) ("Limiting liability under § 1106 to service providers who have a preexisting relationship would not only contravene the clear language of the statute, but would not be rationally related to Congress's overriding concern with the protection of plan participants and beneficiaries.") (internal quotation marks omitted).

The court is not persuaded that the party-in-interest definition includes a service provider that has no preexisting relationship with the plan, or that the definition is ambiguous on that question. The natural reading of the phrase "a person providing services to such plan" is that the person has started providing services or has at least agreed to do so. Plaintiffs' reading of that phrase would also stand in stark contrast to the rest of the party-in-interest definition, which is focused on "entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." Harris Trust and Savings, 120 S. Ct. at 2185. Because the definition is not ambiguous on this point, Chevron deference does not apply to the Department of Labor's statement. Although Congress's 2020 amendments may have intended the new disclosure requirements to apply to all service contracts with group health plans, the court is not persuaded that Congress contemplated or intended that doing so would broaden the party-in-interest definition to include all new service providers, thereby subjecting every type of service contract to § 1106(a) scrutiny.

Because VALIC was not a party in interest when it entered the contract, the contract is not a § 1106(a) prohibited transaction.

b.   Was Collecting the Fee a Separate "Transaction"?

Plaintiffs also argue that collecting the fee was a separate prohibited transaction and that VALIC was certainly a party in

interest by that time due to the PD Contract.[61]   Section 1106(a) prohibits fiduciaries from "caus[ing] the plan to engage in a transaction" for services with a party in interest.   When it collected the fee VALIC had been providing services to Plaintiffs for several years.   VALIC therefore likely met the § 1002(14) party-in-interest definition at that time.   But the court is not persuaded that collection of the contractually predetermined surrender fee is a separate "transaction" within the meaning of § 1106(a).

Plaintiffs cite <u>Peters v. Aetna Inc.</u>, 2 F.4th 199 (4th Cir. 2021), to support their argument that collecting the fee was a separate transaction.   In <u>Peters</u> a beneficiary challenged a fee structure between her health insurance plan's administrator and one of the administrator's subcontractors.   <u>Id.</u> at 212-13.   The plan's contract with the administrator stated that the administrator was responsible for any payments due to subcontractors.   <u>Id.</u> at 210. Instead, the administrator asked its subcontractor to bill incorrectly in a way that resulted in the plan and its members paying the subcontractor's administrative fees.   <u>Id.</u>   The plaintiff alleged that the subcontractor was a party in interest and engaged in a § 1106(a) prohibited transaction with the plan administrator, a fiduciary.   <u>Id.</u> at 239.   The court concluded that the subcontractor was not a party in interest when it initially contracted with the administrator because they had no prior

_____

[61]Plaintiffs' Response, Docket Entry No. 58, pp. 23-24.

relationship.   Id. at 239-40.   But the court held that the
subcontractor "could be a party in interest because it 'provided
services to the plan at the time [its administrative] fees were
paid.'"   Id. at 240.

The court in Chavez reached the opposite conclusion.   2018
WL 6220119, at *3.   In Chavez plaintiff-beneficiaries sued a
service provider of their employer's retirement plan, alleging
§ 1106(a) prohibited transactions.   Id. at *1.   Plaintiffs alleged
that "the plan fiduciaries caused the plans to engage in a separate
transaction under § 1106(a) each time they paid Defendants' fees —
even though these fees were negotiated and agreed to before
Defendants became parties in interest."   Id. at 3 (emphasis in
original).   The court rejected this argument, holding that "the
plan fiduciaries did not 'cause the plan[s]' to engage in a
transaction within the meaning of § 1106(a) when they fulfilled
their contractual obligation to pay Defendants' fees in accordance
with the terms of the initial contract."   Id. The court emphasized
that "at the time Defendants initially contracted with the plan
fiduciaries and negotiated the fee structure complained of by
Plaintiffs, there was no preexisting relationship between
Defendants and the plan fiduciaries."   Id. at *4.

The court is persuaded that the Chavez rule should apply here.
Assuming that Peters is relevant,[62] it could undermine the

_____

[62]On the surface, Plaintiffs' argument is supported by Peters'
statement that a person "could be a party in interest because it
(continued...)

limitation of § 1106(a) scrutiny to service providers that have preexisting relationships with the serviced plans. The payment of the contractual fees could always subject the agreement to scrutiny. But when a service provider collects a predetermined fee in accordance with the initial contract's terms, that collection is not a separate transaction that triggers § 1106(a) scrutiny.

3.   Leave to Amend

"In the event the Court grants any part of VALIC's motion to dismiss, Plaintiffs seek leave to amend."[63] Since the court has not entered a scheduling order in this case, the request for leave to amend in governed by Fed. R. Civ. P. 15(a). Rule 15(a) states that "[t]he court should freely give leave when justice so requires." But denying leave to amend may be appropriate in cases of undue delay, bad faith or dilatory motive, repeated failure to cure

---

[62](...continued)
'provided services to the plan at the time its [administrative] fees were paid.'" 2 F.4th at 240. But VALIC's collection of the surrender fee was plainly provided for in its contract with the Plan. By contrast the defendant in Peters incorrectly billed for its administrative services using "CPT" codes. Id. at 210. CPT codes are the American Medical Association's published billing codes that are supposed to "only describe health care procedures and services." Id. at 234. The billing in Peters therefore could not have been straightforward payment in accordance with the contract. Where a person collects compensation not provided for by the contract or in a manner not authorized by the contract, that collection may be a separate transaction. But there is no indication that VALIC acted outside the contract's terms by collecting the surrender fee.

[63]Plaintiffs' Response, Docket Entry No. 58, p. 32.

deficiencies, undue prejudice to the opposing party, and futility. Rosenzweig v. Azurix Corp., 332 F.3d 854, 864 (5th Cir. 2003).

Plaintiffs include a list of possible new allegations, including that VALIC complied with regulatory disclosures applicable only to parties in interest. Plaintiffs also state that they could potentially add new state law claims.

Plaintiffs filed their Complaint in January of 2021.[64] VALIC filed a motion to dismiss before the Eastern District of California transferred the case to this court.[65] That motion raised the very issues that the court now finds fatal to Plaintiffs' Complaint. Plaintiffs' response did not mention the new allegations that they now seek to add or seek leave to amend if VALIC's Motion to Dismiss was denied.[66] Even though no answer had been filed when the case was transferred to this court, Plaintiffs chose not to amend the Complaint. Plaintiffs have been aware of the Complaint's issues for over a year and only now mention these new allegations and claims. Plaintiffs have given no justification for such delay. Also, Plaintiffs' list of new allegations is generic and equivocal. Plaintiffs state that they "can potentially amend" to add state law

---

[64]Complaint, Docket Entry No. 1, p. 1.

[65]Memorandum of Points and Authorities in Support of Motion to Dismiss and/or Motion to Strike of Defendant The Variable Annuity Life Insurance Company, attached to Notice of Motion and Motion to Dismiss and/or to Strike of Defendant The Variable Annuity Life Insurance Company, Docket Entry No. 20-2, p. 1.

[66]See generally Plaintiffs' Opposition to Defendant VALIC's Motion to Dismiss and/or Motion to Strike, Docket Entry No. 23.

claims and "could also <u>potentially</u> add allegations about VALIC's decision to hold the Plan's assets ransom." (Emphasis added.)[67] Plaintiffs also state that they could add "allegations about the manner in which VALIC exercised discretion in imposing the surrender charge" but give no examples.[68]  In light of the ample opportunity Plaintiffs have had to add these allegations and their undue delay in doing so, it would not be an efficient use of the court's or the parties' resources to grant leave to amend. Plaintiffs' request for leave to amend will therefore be denied.

**B.   VALIC Financial's Motion to Dismiss**

Because the court concludes that Plaintiffs have failed to state a claim against either Defendant,[69] VALIC Financial's Motion to Dismiss will be denied as moot.

**IV.   <u>Conclusion and Order</u>**

For the reasons explained above, the court concludes that Plaintiffs' ERISA §§ 1104(a) and 1106(a) claims fail as a matter of law.  Plaintiffs' request for leave to amend (found at p. 32 of The Markham Plaintiffs' Opposition to Defendant VALIC's Motion to Dismiss and/or Motion to Strike, Docket Entry No. 58) is **DENIED**. The Motion to Dismiss of Defendant The Variable Annuity Life

---

[67]Plaintiffs' Response, Docket Entry No. 58, p. 33.

[68]<u>Id.</u>

[69]VALIC's MTD, Docket Entry No. 55, p. 7 n. 1

-29-

Insurance Company (Docket Entry No. 55) is **GRANTED;** and the Motion to Dismiss of Defendant VALIC Financial Advisors, Inc. (Docket Entry No. 56) is **DENIED AS MOOT.**

SIGNED at Houston, Texas, on this 5th day of October, 2022.

_____
                        SIM LAKE
            SENIOR UNITED STATES DISTRICT JUDGE

-30-